UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ABDALLAH ELSHEIKH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 08 C 1152 |
| v. ) | |
| ) | |
| MICHAEL CHERTOFF, as Director ) | Judge Kennelly |
| of the Department of Homeland Security, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' LOCAL
RULE 56.1(a)(3) STATEMENT OF MATERIAL FACTS
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendants Michael Chertoff, Secretary of the Department of Homeland Security, and Robert S. Mueller, Director of the Federal Bureau of Investigation, by Patrick J. Fitzgerald, United States Attorney for the Northern District of Illinois, submits the following statement of facts to which he contends there is no genuine issue and entitles him to judgment as a matter of law.[1]

**Jurisdictional Information**

1.      Plaintiff Abdallah Elsheikh filed this mandamus action seeking to compel the United States citizenship and Immigration Services to adjudicate his petition for naturalization and to compel the Federal Bureau of Investigation to complete its background investigation of him. Gov. Ex. A.

---

[1] This statement is offered for summary judgment only and every fact is stated in the light most favorable to the non-moving party. None of these factual statements are intended to be party-admissions for use at trial.

2.     Michael Chertoff and Robert S. Mueller are named as defendants in their official capacities only as Secretary of the Department of Homeland Security and Director of the Federal Bureau of Investigation, respectively.  Gov. Ex. B.

3.     Elsheikh alleges that jurisdiction is proper in this court pursuant to 8 U.S.C. § 1447(b), and 28 U.S.C. § 1361.  The defendants dispute the allegations of jurisdiction.

4.     Venue is proper pursuant to 28 U.S.C. § 1391(e).

**Applications for Naturalization**

5.     Elsheikh, a native and citizen of Lebanon, has been a lawful permanent resident of the United States since 2001.  Gov. Ex. A, ¶ 5, Gov. Ex. C, ¶ 4.

6.     In August 2006, Elsheikh and his wife, Rola, submitted applications for United States citizenship with the USCIS Nebraska Service Center.  Gov. Ex. A, ¶ 9; Gov. Ex. C, ¶ 3.  They also provided certain information to USCIS for purpose of conducting a background check.  Gov. Ex. A, ¶ 10.

**USCIS Process for Naturalization Application**

7.     After an application for naturalization is filed, USCIS conducts several security and background checks to ensure that the applicant is eligible for naturalization and that he is not a risk to national security or public safety.  Gov. Ex. C, ¶ 9.

8.     In addition to checks of DHS's own records systems, these background checks currently include (a) an FBI fingerprint check for relevant criminal history records on the applicant; (b) a check against the DHS-managed Interagency Border Inspection System containing records and "watch list" information from more than twenty federal law enforcement and intelligence agencies;

and (c) an FBI name check, which is run against FBI investigative databases containing information that is not necessarily revealed by the FBI's fingerprint check or IBIS. Gov. Ex. C, ¶ 9.

9. Law enforcement checks have revealed significant derogatory information on some USCIS applicants, including applicants seeking naturalization, which have resulted in USCIS's denial of the application, and in some cases removal from the United States. Gov. Ex. C, ¶ 10.

10. In many instances, the disqualifying information on the applicant has been discovered as a result of the IBIS or FBI name checks, but not by the fingerprint check alone. Gov. Ex. C, ¶ 10.

11. Only after the checks are complete is the applicant is scheduled for an in-person interview in the USCIS district office with jurisdiction over his place of residence. Gov. Ex. C, ¶ 11.

12. After the interview, and review of any subsequently filed evidence, the application is adjudicated by a district officer and, if approved, the applicant is then scheduled for the next available oath ceremony. Gov. Ex. C, ¶ 11.

13. Since September 2001, USCIS has submitted millions of name check requests to the FBI. Gov. Ex. C, ¶ 14.

14. As of May 2007, USCIS reported 329,160 FBI name check cases pending, including naturalization, asylum, and adjustment of status applications combined, with 31,144 FBI name checks pending more than 33 months. Gov. Ex. C, ¶ 14.

15. There are four USCIS Regional Service Centers in the United States, each of which has jurisdiction over certain applications and petitions filed by persons or companies within its respective geographic jurisdiction , and/or exclusive nationwide jurisdiction over other types of applications. Gov. Ex. C, ¶ 16. The Nebraska Service Center accepts and processes naturalization applications from aliens living in 20 Midwestern and Northwestern states, including Illinois. *Id.*

16. There are 84,355 naturalization filings currently being processed at the Nebraska Service Center, with approximately 21,728 awaiting responses on FBI name checks. Gov. Ex. C, ¶ 17.

17. There were approximately 876,365 naturalization cases pending at the service centers and district offices at the end of fiscal year 2007. Gov. Ex. C, ¶ 17. USCIS estimates that 191,046 pending naturalization applications are awaiting responses on FBI name checks. *Id.*

18. Cases in which the pending FBI name check is the only impediment to final adjudication are audited on a weekly basis in order to identify those in which a response from the FBI has been received. Gov. Ex C, ¶ 18. Once the security checks are completed, the case can be forwarded to the district office for interview. *Id.*

19. A complete FBI criminal background investigation is needed before any application for naturalization can be adjudicated by USCIS. Gov. Ex. C, ¶ 7.

20. Elsheikh's name check request was electronically submitted to the FBI on August 15, 2006, approximately one week after his Form N-400 was filed. Gov. Ex. C, ¶ 15. His name check remains pending. *Id.*; Gov. Ex. D., ¶ 43.

21. Elsheikh's background and security check has not been completed by the FBI. Gov. Ex. C, ¶ 7; Gov. Ex. D, ¶ 43.

22. Elsheikh has not been scheduled for an interview by USCIS regarding his application. Exhibit A, ¶ 11.

23. Elsheikh's wife, Rola, had her background completed, application granted, and was naturalized in June 2008. Gov. Ex. C, ¶ 2; Gov. Ex. D, ¶ 44.

24.     Like all applicants for naturalization, Elsheikh holds a lawful permanent resident card which allows him to lawfully work in the United States and to return from travel abroad while his naturalization application is pending. Gov. Ex. C, ¶ 22.

**The FBI Conducts Background Checks for USCIS**

25.     The FBI's National Name Check Program ("Program") disseminates information from the FBI's Central Records System in response to requests submitted by federal agencies, congressional committees, the federal judiciary, foreign police and intelligence agencies, and state and local criminal justice agencies. The CRS contains the FBI's administrative, personnel, and investigative files. Gov. Ex. D, ¶ 4.

26.     The Program's genesis is Executive Order No. 10450, issued during the Eisenhower Administration, that addresses personnel security issues and mandates National Agency Checks as part of the pre-employment vetting and background investigation processes for prospective government employees. Gov. Ex. D, ¶ 4. The FBI also performs the primary National Agency Check conducted on all United States government employees. *Id.* The Program responds to requests for background information from FBI files on individuals before bestowing a privilege, such as government employment or appointment, a security clearance, attendance at a White House function, a "green card" or naturalization, admission to the bar, or a visa. *Id.* In addition to the more than 70 federal, state, and local agencies that regularly request FBI name searches, the FBI conducts numerous name searches in direct support of the FBI's counterintelligence, counterterrorism, and homeland security efforts. *Id.*

27.     In 1995, the FBI implemented the Automated Case Support ("ACS") system for its Headquarters, Field Offices, and Legal Attaches, converting more than 105 million records from

automated systems previously utilized by the FBI. Gov. Ex. D, ¶ 9. The ACS system consists of three automated applications that support case management functions for all investigative and administrative cases: (1) Investigative Case Management, (2) Electronic Case File, and (3) Universal Index. *Id.*

28.     The FBI does not index every name in its files, but indexes only that information considered pertinent, relevant, or essential for future retrieval. Gov. Ex. D, ¶ 10.

29.     When the FBI searches a person's name, the name is electronically checked against the FBI's Universal Index, searching for instances of the individual's name, social security number, and dates close to his or her date of birth, whether a main file or reference file. Gov. Ex. D, ¶ 11. Any "main" file name would be that of an individual who is, himself or herself, the subject of an FBI investigation, whereas any "reference" would be an individual whose name appears as part of an FBI investigation. *Id.* "References" include associates, witnesses, conspirators, or other person a special agent believed it important to include a particular name in the index for later recovery. *Id.* The names are searched in a multitude of combinations, switching the order of first, last, and middle names, as well as combinations with only the first and last names, first and middle names, and so on. Gov. Ex. D, ¶ 11.

30.     The Program application searches names phonetically against the Universal Index records and retrieves similar spelling variations which is especially important considering that many names in FBI indices have been transliterated from a language other than English. Gov. Ex. D, ¶ 10.

31.     If there is a match with a name in a FBI record, it is designated as a "hit," meaning that the system has stopped on a possible match with the name being checked. Gov. Ex. D, ¶ 12.

If a search comes up with a match to a name and either a close date of birth or social security number, it is also flagged. *Id.*

32.     There are four stages involved in the completion of an individual name check: (1) batch processing, (2) name searching, (3) dissemination, and (4) file review. Gov. Ex. D, ¶ 9.

33.     Batch processing involves the transfer of the name check requests from USCIS to the National Name Check Program ("NNCPS") on magnetic tapes and each can hold up to 10,000 names. Gov. Ex. D, ¶ 13. The tapes are uploaded into an FBI system and the names are electronically checked against the FBI's Universal Index ("UNI"). *Id.*

34.     During the batch processing phase, approximately 66 percent of the name checks submitted by USCIS are returned to USCIS as having "No Record" within 48-72 hours. Gov. Ex. D, ¶ 13. A "No Record" indicates that the FBI's Universal Index database contains no identifiable information regarding a particular individual. *Id.* A "No Record" result returned to USCIS definitively concludes the name check process concerning that particular request. *Id.*

35.     The name searching stage involving an expanded manual name search is required for those name check requests that are still pending after the initial electronic check during which an FBI NNCPS employee physically enters the applicant's name into the computer database searching different fields and information. Gov. Ex. D, ¶ 14. This secondary manual name search historically identifies an additional 17 percent of the USCIS requests as having "No Record," for an approximate 83 percent overall "No Record" response rate. *Id.* The results of this 17 percent also are returned to USCIS. *Id.*

36.     The third and fourth stages in the process are dissemination and, if needed, file review. Prior to February 2008, the file review stage preceded the dissemination stage. Because an

increasing number of name check requests involve review of electronic records, and in an effort to improve efficiency, the FBI now uses the file review function in the back end of processing to locate paper records on an as needed basis. Gov. Ex. D, ¶ 15.

37.     The 17 percent of USCIS requests remaining after name searching are identified as possibly being the subject of an FBI record. Gov. Ex. D, ¶ 15. Analysts then review and analyze FBI records and provide results to customers. *Id.*

38.     If a record was electronically uploaded into the FBI's ACS electronic record-keeping system, it can be reviewed quickly; if not, however, the relevant information must be retrieved through the file review process from an existing paper record. Gov. Ex. D,¶ 15. Once this information is retrieved, an analyst reviews the records for possible derogatory information. *Id.* Less than one percent of USCIS's requests are identified with a file containing possible derogatory information. *Id.* When appropriate, the FBI forwards a summary of the derogatory information to USCIS. *Id.*

39.     A name check may also occasionally undergo additional electronic or manual searches depending on the length of time the name check has been pending in the processing queue in the dissemination phase. Gov. Ex. D, ¶ 16. It is not uncommon for a name check to remain pending in this final stage for an extended period because of the volume of earlier-filed name checks that analysts must resolve. During this period, a name check cannot be further processed until it is assigned to an analyst. The additional searches are done to ensure that the analyst in the dissemination phase has up to date information prior to completing and disseminating a name check result. *Id.*

40. At each stage of processing, the NNCPS generally works on the oldest name cheeks first a first-in, first-served protocol. This protocol reflects that all applicants are equally deserving and ensures that all applicants are treated fairly. Gov. Ex. D, ¶ 17. However, if an applicant's name check requires a review of numerous FBI records and files, even though that name check request Came in first, the name check may require additional time until all responsive records are located and reviewed. *Id.*

41. Sometimes, a name check will be handled on an "expedited" basis as determined by USCIS. Gov. Ex. D, ¶ 18. Once designated as an "expedite," that name check proceeds to the front of the queue along with other prioritized name check requests. *Id.*

42. Expedited service allows USCIS to allocate name checks toward its highest priorities and generally to minimize possible health and welfare harm to applicants that may arise while an application is pending, however, the FBI limits the number of expedite requests it will accept from USCIS consistent with available resources and personnel, that is, 100 expedite requests per week. Gov. Ex. D, ¶ 19.

43. Prior to September 11, 2001, the FBI processed approximately 2.5 million name check requests each year. Gov. Ex. D, ¶ 21. As a result of the FBI's post-9/11 counterterrorism efforts, the number of FBI name checks has grown to the more 4 million name checks processed in fiscal 2007. *Id.*

44. Most of the name checks submitted to the FBI over the past few years were submitted by USCIS. Gov. Ex. D, ¶ 22. USCIS name checks for fiscal 2003 made up 64% of the total number of checks, or approximately 3,929,000; in fiscal 2004, USCIS checks were 46% of the total, or about

1,727,000; in fiscal 2005, USCIS checks totaled 45%, or about 1,512,000; in fiscal 2006, USCIS checks totaled 45% or 1,633,000; and in fiscal 2007, USCIS checks were 52%, or 2,113,000. *Id.*

45. In November 2002, heightened national security concerns prompted deeper, more detailed clearance procedures required to effectively protect the people and the interests of the United States for background checks of individuals seeking immigration benefits, including the FBI's name check clearance. Gov. Ex. D, ¶ 23. Before November 2002, only the "main" files that could be positively identified with an individual were considered responsive to the immigration authorities name check requests, but because that approach ran a risk of missing a match to a possible derogatory record, the FBI updated its search criteria to include "reference" files requiring the FBI to review many more files in response to each individual background check request. *Id.*

46. In December 2002 and January 2003, INS resubmitted 2.7 million name check requests, addition to its regular submissions, to the FBI for background investigations of all individuals with then-pending applications for immigrations benefits that required background investigations. Gov. Ex. D, ¶ 24. Although many of the FBI's initial responses to those resubmitted requests indicated that the FBI had no information relating to the specific individual who was the subject of the request, approximately 16 percent — or over 440,000 —resubmitted requests indicated that the FBI may have information relating to the subject of the inquiry. *Id.* The FBI completed those 440,000 requests by the Spring of 2008. *Id.*

47. One factor contributing to delays in the processing of name check requests, including Elsheikh's, is the volume of incoming name checks — the total volume of incoming name check requests combined with pending name check requests has historically outpaced NNCPS's available resources to process this volume. Gov. Ex. D, ¶ 25. In fiscal 2007, USCIS submitted approximately

2,113,600 name check requests, of which approximately 1,112,400 represented naturalization-related name checks and approximately 794,800 represented adjustment of status-related name checks, and at the end of fiscal 2007, there were over 402,800 pending USCIS name check requests, 167,000 represented naturalization-related name checks and over 197,900 represented adjustment of status-related name checks. *Id.*

48. The number of "hits" (possible match in an FBI record) on a name when it is reviewed may further contribute to a delay in processing a name check request. Gov. Ex. D, ¶ 26.

49. The processing of common names also contributes to a delay in processing a name check request. Gov. Ex. D, ¶ 27. Name check requests are searched in a multitude of combinations, and without detailed information in both the file and agency submission, it is difficult to determine whether or not a person with a common name is the same person mentioned in FBI records; common names can often have more than 200 hits on FBI records. *Id.*

50. The accessibility of the FBI record needed for review also contributes to a delay in processing a name check request. Gov. Ex. D, ¶ 28. For records predating October 1995, the paper record has to be located from over 265 possible location across the country, retrieved, and reviewed as the record text may or may not be available electronically. *Id.* Requests often involve coordinating the retrieval and review of files from the 56 different FBI field offices. *Id.*

51. A single name check may involve locating and reviewing numerous files, all at different physical locations that must be communicated internally from NNCPS to the field, and handled according to the current priorities of the particular field office. Gov. Ex. D, ¶ 28. Since it is a paper based process, it is time consuming and labor intensive. *Id.*

52. NNCPS is developing a name check dissemination database as an electronic repository for name check results, to eliminate manual and duplicate preparation of reports to other agencies, and provide avenues for future automation of the name check process. Gov. Ex. D, ¶ 31.

53. In an effort to significantly reduced the pending USCIS name check workload, the FBI and USCIS have implemented the use of contractor resources to prioritize the processing of "Single-Hit" USCIS Name Check requests, that is, pending name check requests that have only one FBI file potentially identified with it that needs to be reviewed in order to process the request. Gov. Ex. D, ¶ 32.

54. To maximize productivity, the FBI is utilizing employee overtime, hiring additional employees to fill current vacancies, and using an employee development program to streamline the training of new employees decreasing the amount of time needed before a new employee can begin to significantly impact the NNCPS workload. Gov. Ex. D, ¶ 33.

55. In addition, the FBI has started scanning its paper files to provide machine readable documents for the database, and it is also building an Electronic Records System that allows for future automation of the name check process. Gov. Ex. D, ¶ 34.

56. The FBI is also creating a central repository of records that will alleviate the need to retrieve records stored at the 265 locations throughout the FBI, expediting access to information contained in billions of documents that are currently stored in locations throughout the United States and the world. Gov. Ex. D, ¶ 37.

57. The FBI cannot provide a specific time frame for completing any particular name check submitted by USCIS. Gov. Ex. D, ¶ 38. The processing of name checks depends upon a number of factors, including where in, the processing queue the name check lies; the workload of

the analyst processing the name check; the volume of expedited name checks the analyst must process for, among others, military deployment, "age-outs," sunset provisions such as Diversity Visa cases, compelling reasons such as critical medical conditions, and loss of social security or other subsistence; the number of "hits" that must be retrieved, reviewed and resolved; the number of records from various field offices that must be retrieved, reviewed and resolved; and, more generally, the staff and resources available to conduct the checks. *Id.* The proprietary software NNCPS utilizes to process name checks does not report where in the processing queue a particular name cheek request may lie. *Id.*

58.     The FBI and USCIS have developed a joint business plan to address the currently pending USCIS name checks, the ultimate goal of which is to process USCIS name checks at a level of 98% within 30 days or less of receipt with the remaining 2% to be processed with 90 days or less of receipt by the FBI. Gov. Ex. D, ¶ 39; Gov. Ex. E. Also under the plan, NNCPS's current priority for USCIS is to resolve USCIS name checks pending with the FBI for more than two years. Gov. Ex. D, ¶ 39.

59.     While the FBI is sensitive to the impact of the delays in processing name check requests, the possible consequences of the FBI's mission on homeland security requires that its name check process be primarily focused on providing accurate and thorough results. Gov. Ex. D, ¶ 39.

60.     When the name check is completed, the FBI provides the results to USCIS as quickly as possible. Gov. Ex. D, ¶ 40.

61.     The FBI does not publicly disclose name check results or any underlying "hits" because to do so could alert plaintiffs and/or other individuals to the existence of pending

investigations, thus potentially compromising those investigations, confidential sources or investigative techniques. Gov. Ex. D, ¶ 42.

62.     The name check request for Elsheikh was received from USCIS on or about August 18, 2006, and has not been completed. Gov. Ex. D, ¶ 43. Elsheikh's name cheek is pending in the processing queue and the FBI is performing his name check in response to USCIS's request in accordance with its standard procedures. *Id.*

63.     The name check request for Rola Elsheikh was received by the FBI from USCIS on or about August 18, 2006, and was completed on November 25, 2007, also having been performed in accordance with its standard procedures. Gov. Ex. D, ¶ 44.

          Respectfully submitted,

          PATRICK J. FITZGERALD
          United States Attorney

          By:   s/ James M. Kuhn, Sr.
             JAMES M. KUHN, SR.
             Assistant United States Attorney
             219 South Dearborn, Room 500
             Chicago, Illinois 60604
             (312) 353-1877
             james.kuhn @ usdoj.gov

**EXHIBITS TO THE DEFENDANTS'**
**RULE 56.1 STATEMENT OF MATERIAL FACTS**

A    Complaint (without exhibits)

B    Answer

C    Declaration of F. Gerard Heinauer

D    Declaration of Michael A. Cannon

E    FBI Records Management Division — National Name Check Program Business Plan